**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SHEYVETTE DINKENS,

Plaintiff,

v.

U.S.D. 500,

Defendant.

Case No. 2026-CV-2509

**COMPLAINT**

The plaintiff, Sheyvette Dinkens, states and alleges the following claims for relief against the defendant, U.S.D. 500.

**JURISDICTION AND VENUE**

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331. The plaintiff's claims under Title VII were included in a timely administrative charge filed with the Equal Employment Opportunity Commission ("EEOC"). A right-to-sue letter was issued by the EEOC to the plaintiff regarding these claims, and this action was filed 90 days after receipt of the right-to-sue letter.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C § 1391 (b)-(c).

**PARTIES**

4. The plaintiff, Sheyvette Dinkens, is an African-American female who was formerly employed by U.S.D. 500.

5. The governmental defendant, U.S.D. 500, is a unified public school district which is created by state law, and which is located in Kansas City, Kansas.

## FACTUAL ALLEGATIONS

6. Ms. Dinkens was hired by U.S.D. 500 in January of 2018 to teach business courses at Wyandotte High School ("WHS"). Mary Stewart was formerly the principal of WHS. Ms. Stewart is Caucasian.

7. During the 2023-2024 school year, Ms. Dinkens was teaching two business courses at WHS which provided dual credit for the students at both the high school and at the Kansas City Kansas Community College (KCKCC). Ms. Dinkens taught these courses in a dual role as an employee of U.S.D. 500, and as a Concurrent Adjunct Professor at KCKCC. Ms. Dinkens received additional compensation from KCKCC for teaching these two courses. Ms. Dinkens had taught these two courses for several years.

8. During the 2023-2024 school year, Ms. Dinkens also served as the President of the Parents as Teachers Association ("PTSA") at WHS. The meetings of the PTSA typically were held at WHS, and Ms. Stewart usually attended the meetings.

9. On or about February 16, 2024, Ms. Dinkens filed a grievance against Ms. Stewart, in accordance with U.S.D.'s written policies. In this grievance, Ms. Dinkens alleged that Ms. Stewart had treated Ms. Dinkins unfairly because of her race. Specifically, Ms. Dinkens alleged that she had been active in planning and preparing for a job fair at WHS, including recruiting a number of local businesses. However, Ms. Stewart initially refused to approve the job fair, based on false and pretextual reasons.

10. In her grievance, Ms. Dinkins further alleged that Ms. Stewart had initially approved the PTSA implementing a cell phone application to improve communications

among students and staff at WHS. In order to implement this application, Ms. Dinkens sent out an email, seeking permission from parents to share their cell phone numbers with the PTSA. However, shortly thereafter, Ms. Stewart sent out her own email to students and staff at WHS, instructing them to disregard Ms. Dinkens' email. Ms. Dinkens was embarrassed and humiliated by Ms. Stewart's action.

11. On or about March 28, 2024, Ms. Stewart reviewed the courses to be offered during the 2024-2025 school year for dual credit at both WHS and KCKCC. Ms. Stewart decided to cancel the business courses which Ms. Dinkens taught, based on false and pretextual reasons. However, Ms. Stewart did not cancel other dual credit courses which were taught by white teachers, who were similarly situated to Ms. Dinkens.

12. Ms. Stewart's cancellation of the business courses which Ms. Dinkens taught caused Ms. Dinkens to suffer anger and embarrassment, and it also harmed her future employment prospects as an Adjunct Professor at KCKCC.

13. On May 23, 2024, the job fair took place at WHS. During this event, a confrontation occurred between Ms. Dinkens and Ms. Stewart regarding who could attend the job fair. Ultimately, officials of U.S.D.500 instructed Ms. Stewart to go inside the school building to avoid further conflict.

14. On or about May 25, 2024, Ms. Dinkens resigned from her employment with U.S.D. 500.

## COUNT I: DISPARATE TREATMENT

15. The above paragraphs 1-14 are incorporated herein by reference.

16. Ms. Dinkens is protected by Title VII from disparate treatment based on her race.

17. In violation of Title VII, U.S.D. 500 treated Ms. Dinkens less favorably than other non-African American employees under similar circumstances. Specifically, Ms. Stewart cancelled the dual credit courses which Ms. Dinkens taught.

18. As a result of the disparate treatment to which Ms. Dinkens was subjected by Ms. Stewart, Ms. Dinkens has suffered damages in the form of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life.

WHEREFORE, Ms. Dinkens prays for judgment against U.S.D. 500 for damages in excess of $75,000.00, consisting of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life, plus attorney fees, prejudgment interest and litigation costs.

**COUNT II: RETALIATION**

19. The above paragraph 1-18 are incorporated herein by reference.

20. Ms. Dinkens is protected by Title VII from retaliation for opposing what she believes to be racial discrimination.

21. In violation of Title VII, U.S.D. 500 retaliated against Ms. Dinkens for opposing what she believed to be racial discrimination by Ms. Stewart. Specifically, Ms. Stewart retaliated against Ms. Dinkens for filing and pursuing grievances against Ms. Stewart, including the grievance filed on or about February 16, 2024.

22. Ms. Stewart's acts of retaliation against Ms. Dinkens, included but were not limited to: (a) cancelling the dual credit courses which Ms. Dinkens taught; and (b) initially opposing, and then refusing to support, the job fair which took place on May 23, 2024.

23. As a result of the retaliatory acts to which Ms. Dinkens was subjected by Ms. Stewart, Ms. Dinkens has suffered damages in the form of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life.

WHEREFORE, Ms. Dinkens prays for judgment against U.S.D. 500 for damages in excess of $75,000.00, consisting of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life, plus attorney fees, prejudgment interest and litigation costs.

## COUNT III: HOSTILE WORK ENVIRONMENT

24. The above paragraphs 1-23 are incorporated herein by reference.

25. Ms. Dinkens is protected by Title VII from being subjected to a hostile work environment based on her race.

26. In violation of Title VII, U.S.D. 500 subjected Ms. Dinkens to a hostile work environment based on her race. Specifically, Ms. Stewart subjected Ms. Dinkens to a hostile work environment through a pattern of abusive acts against Ms. Dinkens which included, but were not limited to: (a) opposing, or failing to support, Ms. Dinkens' efforts as the President of the PTSA, including implementing a cell phone application to improve communications among students and staff at WHS; (b) cancelling the dual credit courses which Ms. Dinkens taught; (c) initially opposing, and then refusing to support, the job fair which took place on May 23, 2024; (d) discussing with other employees Ms. Dinkens' work performance in a negative or inaccurate manner; and (e) withholding, or limiting, financial and/ or administrative support for programs and activities which were initiated by Ms. Dinkens, and which had educational and professional values for Ms. Dinkens'

students. This pattern of abusive acts by Ms. Stewart unreasonably interfered with Ms. Dinkens' performance of her work duties.

27. As a result of the hostile work environment to which Ms. Dinkens was subjected by Ms. Stewart, Ms. Dinkens has suffered damages in the form of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life.

WHEREFORE, Ms. Dinkens prays for judgment against U.S.D. 500 for damages in excess of $75,000.00, consisting of loss of future compensation, emotional distress, mental anguish, and loss of enjoyment of life, plus attorney fees, prejudgment interest and litigation costs.

Respectfully submitted,

/s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
McEntire & Jarboe, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone (785) 357-6311
Fax (785) 357-0152
ajohnson@sloanlawfirm.com
***ATTORNEY FOR PLAINTIFF***

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

Respectfully submitted,

/s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
McEntire & Jarboe, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone (785) 357-6311
Fax (785) 357-0152
ajohnson@sloanlawfirm.com
***ATTORNEY FOR PLAINTIFF***